IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SARAH CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:15-CV-00497 |
| v. | ) | |
| | ) | |
| SALON DEL SOL, INC. | ) | By: Hon. Robert S. Ballou |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

# MEMORANDUM OPINION[1]

In this employment discrimination case, I **GRANT** summary judgment for Defendant Salon Del Sol ("salon") as to Plaintiff Sarah Carroll's ("Carroll") hostile work environment claim and **DENY** summary judgment as to Carroll's retaliation claim.[2]

## I.

Carroll, who is a Caucasian woman, began working in 2011 as a hair stylist on a part-time basis for Salon Del Sol. Dkt. No. 29-1, p. 3–5. Carroll was enrolled as a full-time student at Virginia Western Community College when she began at the salon, which allowed her to adjust work hours to accommodate her school schedule, including providing time to complete continuing education requirements. Dkt. No. 29-1, p. 6. Throughout the time Carroll worked at

---

[1] This case is before me by consent under 28 U.S.C. § 636(c).

[2] Defendant, in its reply brief, asked the Court to strike two declarations, but did not file a separate motion. Dkt. No. 38, p. 3–4. The drafters of the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure have stated: "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting…There is no need to make a separate motion to strike." Fed. R. Civ. Pro. 56. Thus, I will handle the motion to strike here. Defendant moved to strike parts of two declarations from former employees, Whitney Wohlford and Lauren Sacra, to the extent they contained hearsay and conclusory statements. Dkt. No. 38, p. 3; see also Dkt. No. 36-4; Dkt. No. 36-5. Defendant also objected to the use of the declarations given that Wohlford's and Sacra's depositions "were cancelled by Plaintiff without notice to Defendant" and so these witnesses were not available for cross-examination. Dkt. No. 38, p. 3. I find that these declarations do not contain inadmissible hearsay or inadmissible conclusory accusations, and Defendant had fair opportunity to depose these witnesses but chose not to. Thus, these declarations are admissible for purposes of summary judgment.

the salon, she was involved in a long-term relationship with an African American man. Dkt. No. 29-1, p. 25, 6, 14.

In January 2013, Denise Vetsch ("Vetsch", previously "Denise Latham"), who also is Caucasian and a co-owner of the salon, assumed company level management. She sent an email to all employees on January 21, 2013, stating that there would be a change in management and "[f]or those who aren't able to accept the changes as they happen, separation is necessary." Dkt. No. 29-4, p. 1. This email also stated: "We are no longer going to be hampered by hostage management and everyone will be held accountable for their actions, even if liberation is the best solution, regardless of talent or revenue-making abilities." Dkt. No. 29-4, p. 1. Carroll responded to Vetsch's email, expressing how happy she was to work for the salon. Dkt. No. 29-1, p. 14–5.

In the spring of 2013, Vetsch hired Shawn Spencer ("Spencer") as manager of the salon and, thus, Carroll's immediate supervisor. Dkt. No. 29-1, p. 18–19. Spencer, who is African American, was responsible for enforcing the Company's policies, which included prohibiting employees from changing their schedules numerous times. Dkt. No. 29-2, p. 13. Spencer made several changes to Carroll's schedule this spring, which Carroll did not like. Dkt. No. 29-1, p. 35. Spencer also made three separate "racial comments" which offended Carroll. See Dkt. No. 29-1, p. 22–9. Spencer told Carroll she "would not hire Carroll's friend [an African American] as a front desk receptionist because the woman's 'long fingernails and feather earrings would scare the white people.'" Dkt. No. 29-1, p. 22–3. Spencer stated though that she was only repeating what her Caucasian colleague had told her about this particular candidate. Dkt. No. 29-2, p. 7–8. Spencer also told Carroll in the lobby of the salon that she did not understand "the whole 'white-girl-dating-black-guy-thing.'" Dkt. No. 29-1, p. 22–3. Both Carroll and Spencer were involved

2

in inter-racial relationships at that time. Dkt. No. 29, p. 7. Finally, Spencer told Carroll, "something to the effect of 'You white girls are made for black men because you're curvy.'" Dkt. No. 29-1, p. 28. Carroll also alleges that Spencer made "other comments about dating black men", including a "very intimidating conversation" Spencer had with "another co-worker, Kari Bagby, about her interracial relationship with an African American male." Dkt. No. 36-1, p. 9. Carroll states other hair stylists were also offended by Spencer and her racially-charged comments. Dkt. No. 36, p. 2.

On June 12, 2013, Carroll sent an email to Spencer and Vetsch, expressing her concerns about Spencer's behavior. Dkt. No. 29-5, p. 3–4. In this email, Carroll stated to Spencer:

> …I cannot hear one more racial comment come out of your mouth. The comments you make about white women dating black men is disgusting. My child is bi-racial so I take serious offense to that. The night you and I had the conversation about it, I was slightly offended but you didn't approach me as aggressively and disrespectfully as you did another employee. When I heard that you continued with this issue, I was appalled. But the comments didn't stop there. You have made comments about how we 'white girls are curvy and made for black men'. Its very disturbing that my manager turns everything racial. Also I sent you an amazing front desk prospect and your comment was that you didn't want to 'scare the white people' because of her finger nails and earrings. That's absolutely absurd.

Dkt. No. 29-5, p. 3. Carroll also raised her concerns about the salon accommodating her school schedule, stating that Spencer "has been very resistant and difficult when adjusting my schedule. Quite frankly, I am tired of the attitude I receive when asking her to do her job", adding that "Salon del Sol has lost several great employees over the past few weeks and I believe it is, in large part, due to Shawn." Dkt. No. 29-5, p. 4. Carroll then stated if her concerns "don't drastically change very soon, you will loose me as well. I finish school in August and I cannot work, as a full time employee, under this kind of management." Dkt. No. 29-5, p. 4.

3

On June 13, 2013, Vetsch responded, thanking Carroll for voicing her concerns and asking to meet in person with Spencer present as well to discuss the issues. Vetsch also stated she thought Spencer was doing a great job and had no intention of terminating her. Dkt. No. 29-5, p. 3. Carroll responded the next day, telling Vetsch: "I never said I want Shawn to leave the company. If you thought my email said that, you might want to read it more thoroughly." Dkt. No. 29-5, p. 2. Carroll also expressed concern that Spencer told other salon employees that Carroll had sent the earlier email. Carroll then added that she could not meet on the proposed date, but she would be in the salon on other days. Dkt. No. 29-5, p. 2. Three days later, on June 17, Vetsch responded to Carroll, copying Spencer, stating:

> It appears you are severely disgruntled and unhappy with your employment with SDS [Salon Del Sol]. I believe if a service provider is unhappy with their job then they are unable to provide our guest the level of service we require. Therefore, I think you should liberate yourself and find another company that will better suit your needs.

Dkt. No. 29-5, p. 2. Carroll did not resign her employment; Vetsch terminated her on June 17, 2013. Dkt. No. 5, p. 3–4.

## II.

Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Jacobs v. N.C. Admin. Office of the Courts, No. 13-2212, 2015 WL 1062673, at *4 (4th Cir. Mar. 12, 2015) (internal citations and quotations omitted) (citing Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013)). "The moving party bears the initial burden of showing the absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law. Once the moving party satisfies this burden, the nonmoving party then must recite specific

4

facts showing that there is a genuine dispute of fact which merits a trial." Anderson v. Kroger Ltd. P'ship I, No. 2:11CV192, 2011 WL 5101764, at *1-2 (E.D. Va. Oct. 26, 2011) (internal citations and quotations omitted) (citing Honor v. Booz–Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004)).

In determining whether summary judgment is appropriate, the court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The court therefore cannot weigh the evidence or make credibility determinations." Jacobs, 2015 WL 1062673, at *4 (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)). Where the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir.1991) (citing Matsushita Elec., 475 U.S. at 587, and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

### III.

**Hostile Work Environment**

Carroll alleges that Salon Del Sol has subjected her to a racially hostile work environment in violation of Title VII. To establish a *prima facie* case, Carroll must show that the harassment was "(1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere," and (4) that "there is some basis" for imputing liability upon the employer. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183–84 (4th Cir. 2001).

5

Salon Del Sol does not challenge that the harassment was unwelcome and that there is some basis for imputing Spencer's comments upon Salon Del Sol. In its reply brief, Salon Del Sol raises for the first time an issue with the second element, arguing that "nowhere in her Opposition Brief does Plaintiff argue or submit evidence in support of an argument that Ms. Spencer harassed or demeaned her [Carroll] because she is Caucasian." Dkt. No. 38, p. 4. To establish that Spencer's conduct was based on a protected trait, Carroll must show that she was targeted *because of* such trait. See Smith v. First Union Nat. Bank, 202 F.3d 234, 242–43 (4th Cir. 2000).

Spencer told Carroll she did not understand why black men date white women and suggested "that black men only like white women due to their curves", and Carroll is Caucasian. Dkt. No. 36, p. 7. Carroll argues she was harassed by Spencer "because of [her] choice of racial – [her] partner's race." Dkt. No. 36, p. 6. Such comments that explicitly reference Carroll's race and relate to her choice in partner are evidence of animus based on race, and it has been established that race-based discrimination that targets Caucasian employees is actionable under Title VII in a hostile work environment claim. See, e.g., Bowen v. Missouri Dep't of Soc. Servs., 311 F.3d 878, 883–84 (8th Cir.2002); Davis v. Kansas City Hous. Auth., 822 F.Supp. 609, 615 (W.D.Mo.1993); Reed v. Airtran Airways, 531 F. Supp. 2d 660, 668 (D. Md. 2008). Thus, this element has been met.

As for the third element of Carroll's *prima facie* case, I find that no genuine issue of material fact exists regarding whether the work environment at Salon Del Sol was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment." Id. The "severe or pervasive" element has both an objective and subjective element. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–2, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). To

6

determine whether there was an objectively hostile environment at Salon Del Sol, the Court must consider the "totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with the plaintiff's performance; and what psychological harm resulted." Martin v. Merck & Co., 446 F. Supp. 2d 615, 629 (W.D. Va. 2006) (citing Harris, 510 U.S. at 21-3, 114 S.Ct. 367; Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir.2000)). This standard is "demanding" to ensure "that Title VII does not become a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84, 141 L. Ed. 2d 662 (1998) (internal citation omitted). The plaintiff must subjectively perceive the environment to be abusive for there to be a Title VII violation. Harris, 510 U.S. at 21–2.

Here, Carroll states she experienced three instances personally when Spencer brought up race during the few months Spencer was her manager. Spencer's comments concerned white women dating black men, "suggestions that black men only like white women due to their curves, and comments that an African-American would not be hired for the front desk because she would 'scare the white people.'" Dkt. No. 36, p. 7. Carroll also alleges that co-workers Bagby, Wohlford and Sacra were similarly offended by Spencer's comments in their own interactions with her. Dkt. No. 36, p. 2. Salon Del Sol, however, maintains that Spencer's conversations with Carroll concerning inter-racial dating were "friendly conversations" about a "subject with which they both had experience." Dkt. No. 29, p. 16. Specifically, the salon contends when Spencer made her comments about not understanding the "white-girl-dating-black-guy-thing", Carroll chose to participate in this conversation because she "thought it would be appropriate to explain in a nice way [Carroll's] standpoint on [the topic of white women

7

dating black men]." Dkt. No. 29, p. 7 (citing Dkt. No. 29-1, p. 32). Indeed, Carroll states in her deposition that the conversation was "cordial." Dkt. No. 29-1, p. 27. The company therefore asserts that "Carroll could have avoided either or both of the discussions, but she chose to remain and participate", and that the comment about an applicant potentially "scaring" the white people was an offhand comment that Spencer heard from another employee and then repeated to Carroll. Dkt. No. 29, p. 16–7.

These incidents, even if accepted as evidence of an unpleasant working environment, do not permeate Salon Del Sol "with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting Harris, 510 U.S. at 21, 114 S.Ct. 367) (internal quotation marks omitted). Carroll only alleges three incidents over the course of several months that she personally experienced, and these comments do not rise to the level of racial slurs or other types of racially motivated comments that would meet this strict standard. Carroll correctly points out that comments do not have to be racial slurs to be actionable, but the comments which form the basis of Carroll's hostile claim resemble "mere offensive utterance[s]" rather than language constituting "pure anathema" to the recipient, and so this element is not met. See Merck, 446 F. Supp. 2d at 629 (finding that the use of the word "nigger" in the workplace, which is "[f]ar more than a mere offensive utterance and constitutes pure anathema to African Americans", did not create a hostile work environment when considering the totality of the circumstances). "Workplaces are not always harmonious locales…complaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable

8

under Title VII." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315–16 (4th Cir. 2008) (internal citations omitted).

Hostile work environment claims are not limited to "the precise behaviors…alleged to have occurred" in earlier cases. Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209 (4th Cir. 2014). Here, however, the conduct alleged does not rise to the same level as those hostile work environment claims which have survived summary judgment. See Walker, at 205 (the plaintiff's coworker made vulgar "sex-based comments to her and other co-workers on a near-daily basis"); Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011) (the plaintiff's supervisor forcibly kissed her, sexually propositioned her, and repeatedly asked her sexually charged questions); Hoyle v. Freightliner, LLC, 650 F.3d 321, 326-27 (4th Cir. 2011) (the plaintiff's coworkers placed sexually provocative photographs throughout the workplace, and affixed a tampon to her key ring); see McLaurin v. Verizon Md., Inc., No. JKB-14-4053, 2015 WL 5081622, at *4 (D.Md. Aug. 26, 2015) (holding that the plaintiff did not allege an actionable hostile work environment claim despite allegations that one co-worker called the plaintiff a "bitch," another co-worker "urinated in front of her," and a supervisor "cursed" at her); Whittaker v. David's Beautiful People, Inc., No. CV DKC 14-2483, 2016 WL 429963, at *5 (D. Md. Feb. 4, 2016).

Further, some of the allegations concern incidents that were not directed towards Carroll, but instead to her co-workers. In her June 2014 email, Carroll seems to say that these comments were worse than any she directly experienced. Dkt. No. 36-7, p. 3. However, as the Fourth Circuit noted, "second-hand harassment, although relevant, [is] less objectionable than harassment directed at the plaintiff." Jennings v. Univ. of N.C., 444 F.3d 255, 272 (4th Cir. 2006) (internal quotation marks omitted). Viewing the evidence in the light most favorable and

9

considering the totality of the circumstances, the plaintiff's allegations do not establish a sufficiently hostile work environment on which to rest her claim.

**Retaliation**

Carroll also alleges that she was subject to retaliation when she complained to Vetsch about Spencer's behavior and was subsequently terminated. To establish a *prima facie* case of retaliation, the plaintiff must show that (1) she engaged in activity protected under Title VII; (2) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment; and (3) the protected activity and the adverse action were causally connected. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998). Retaliation cases, like other discrimination cases, may be proven through either direct evidence of retaliation or through the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The McDonnell Douglas framework applies in retaliation cases "where a plaintiff does not present sufficient direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's protected characteristic(s)", as is the case here. Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016). Under McDonnell Douglas, once the plaintiff establishes a *prima facie* case of retaliation, the burden of *production,* not persuasion, shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. Once such a reason is shown, the burden shifts back to the plaintiff to show that the offered reason is merely a pretext for discrimination. See Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

10

**Protected Activity**

Salon Del Sol first argues that Carroll cannot prove she engaged in protected activity when she complained to Vetsch about Spencer's comments because Spencer's comments did not give rise to a racially hostile work environment. Dkt. No. 29, p. 19. A plaintiff may prevail on a retaliation action even if the underlying discrimination claim fails. See, e.g., Ross v. Comm. Satellite Corp., 759 F.2d 355, 357 n. 1 (4th Cir.1985) ("An underlying discrimination charge need not be meritorious for a plaintiff to prevail on a claim of retaliation for opposition to perceived discrimination."). "Although the retaliation claimant does not have to show that the underlying discrimination claim was meritorious to prevail on a related retaliation claim, he must show that he *subjectively* (that is, in good faith) believed that his employer violated [Title VII], and that his belief was *objectively* reasonable in light of the facts." Johnson v. Mechanics & Farmers Bank, 309 Fed. App'x 675, 685 (4th Cir.2009) (per curiam) (unpublished).

Carroll's hostile work environment complaint then does not need to succeed for her to prevail on her retaliation claim. Instead, to satisfy the protected activity element, Carroll must demonstrate that she subjectively believed she was complaining about conduct that violates Title VII, and that belief must be objectively reasonable. See Jordan v. Alt. Res. Corp., 458 F.3d 332, 338–39 (4th Cir.2006); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406–07 (4th Cir.2005); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (resolving the objective reasonableness of Title VII plaintiff's beliefs through the summary judgment process, thereby making the issue a question of law).

Taking the facts in the light most favorable to the non-moving party, it seems clear that Carroll believed she was opposing an unlawful employment practice. As the record indicates, Carroll sent Vetsch an email indicating she was "disgusted" by Spencer's racial comments and

disturbed in how her supervisor "turns everything racial." Dkt. No. 36-7, p. 3. In <u>Whittaker v. David's Beautiful People, Inc.</u>, 2016 WL 429963 (D. Md. Feb. 4, 2016), the district court similarly found that although the underlying complaint did not give rise to a hostile work environment claim, the plaintiff's protest to her employer did constitute protected activity in the context of the plaintiff's retaliation claim. The <u>Whittaker</u> court relied on Fourth Circuit case law holding "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." 2016 WL 429963, at *6 (citing <u>Burgess v. Bowen</u>, 466 F.App'x 272, 282 (4th Cir. 2012) (citing, <i>inter alia</i>, EEOC Compliance Manual § 8-II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination."))); <u>see</u> <u>also</u> <u>Strothers v. City of Laurel, Md.</u>, No. PWG-14-3594, 2015 WL 4578051, at *10 (D. Md. July 27, 2015) (denying a motion to dismiss a retaliation claim because the plaintiff complained about "harassment," which was sufficient to put employer on notice that she was complaining about discrimination).

      The court explained in <u>Whittaker</u> that the Fourth Circuit has "expanded the scope of what constitutes a protected activity…[and] [a]s Judge Grimm noted recently, this 'broad[er] reading of Title VII extends its protection to an employee who reasonably fears that she is being subjected to unfavorable treatment based on her [protected status], even where, as here, that treatment does not rise to the level of creating a hostile work environment.'" 2016 WL 429963, at *6–7 (citing <u>Young v. Giant Food Stores, LLC</u>, 108 F. Supp. 3d 301, 316–17 (D. Md. 2015)). In <u>Young</u>, the court found the plaintiff's protests were a protected activity even when they were not a plausible hostile work environment claim when the plaintiff "subjectively perceived that she was being discriminated against and identified objective ways in which she was exposed to

12

less favorable treatment" on the basis of her sex. 108 F. Supp. 3d at 316. It was clear such protests were not general workplace grievances. Id. Similarly, Carroll's email to Vetsch clearly indicates she was complaining about racial discrimination in addition to other workplace grievances. Thus, Carroll has sufficiently shown that she engaged in a protected activity even if the underlying conduct about which she complained did not create a hostile work environment.

**Causal Connection**

Salon Del Sol also argues that Carroll has not demonstrated that her complaints to Vetsch about Spencer's racial comments were "the but-for cause of her termination" when making her *prima facie* case. Dkt. No. 38, p. 10. In Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528–33, 186 L. Ed. 2d 503 (2013), the Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action" requiring a plaintiff to prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful actions or actions of the employer." Id. The Supreme Court rejected the "mixed motive" theory of liability in which "a retaliation plaintiff only needed to show that his or her 'employer was motivated to take the adverse employment action by both permissible and forbidden reasons'" in cases involving direct evidence of retaliation. Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015).

Carroll correctly notes that Salon Del Sol relies on an incorrect legal standard when arguing that the heightened causation standard from Nassar applies at this stage. Nassar involved a claim based on direct evidence of retaliatory animus, but Carroll relies on the McDonnell Douglas burden-shifting approach. The Fourth Circuit held in Foster v. Univ. of Maryland-E. Shore that "the McDonnell Douglas framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action.

13

Nassar does not alter the legal standard for adjudicating a McDonnell Douglas retaliation claim."
787 F.3d 243, 252 (4th Cir. 2015). A retaliation claim under McDonnell Douglas requires that a
plaintiff "establish 'both that the [employer's] reason was false and that [retaliation] was the real
reason for the challenged conduct.'" 787 F.3d at 252. The plaintiff "bears the 'ultimate burden
of persuading the court that [he] has been the victim of intentional [retaliation].'" Id. Therefore,
Carroll's e-mail protest to Vetsch does not need to be the sole or "the but-for cause" of her
termination in order to pass this stage, as Salon Del Sol suggests. "[T]he causation standards for
establishing a *prima facie* retaliation case and proving pretext are not identical. Rather, the
burden for establishing causation at the *prima facie* stage is 'less onerous.'" Foster, 787 F.3d 243
at 251 (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989)). Carroll's protest
must be the real reason she was terminated, but this analysis is conducted at the pretext stage
under McDonnell Douglas.

"[A] causal connection for purposes of demonstrating a *prima facie* case [under
McDonnell Douglas] exists where the employer takes adverse employment against an employee
shortly after learning of the protected activity." Pepper v. Precision Valve Corp., 526 F.App'x
335, 337 (4th Cir. 2013) (internal citations omitted). Here, Carroll sent an email to Vetsch raising
her concerns on June 12, 2013 and then was terminated by her on June 17, 2013. The Fourth
Circuit has held that a ten-week period between a protected activity and adverse employment
action "gives rise to a sufficient inference of causation." King v. Rumsfeld, 328 F.3d 145, 151,
151 n.5 (4th Cir. 2003). Accordingly, Plaintiff has shown a causal relation sufficient to establish
a *prima facie* case of retaliation.

**Defendant's Legitimate, Non-Retaliatory Reason for Termination**

Salon Del Sol argues that even if Carroll made a *prima facie* showing of retaliation, the salon had a legitimate reason to terminate Carroll; namely for "insubordination and negative attitude toward management and Company policies." Dkt. No. 29, p. 20. Salon Del Sol asserts that "Carroll's emails did more than complain about Spencer's comments; it issued a list of demands to the Company's owner, including a demand to change Spencer's 'fake personality', a demand to fix Spencer's unwillingness to do as Carroll instructed, and a demand to eliminate Spencer's 'resistance' to changing Carroll's schedule." Dkt. No. 29, p. 20. Indeed, Carroll's June 12 email does list these other work-related grievances, with Carroll stating she will leave if "these things don't drastically change very soon." Dkt. No. 29-5, p. 4. After Vetsch responded to this June 12 email trying to arrange a time to meet to discuss these issues and expressing her faith in Spencer, Carroll replied on June 14, stating: "I never said I want Shawn to leave the company. If you thought my email said that, you might want to read it more thoroughly." Dkt. No. 29-5, p. 2. She added at the end: "Unfortunately, my schedule doesn't allow for a meeting on Tuesday due to school. However I will be in the salon Thursday Friday and Saturday." Dkt. No. 29-5, p. 2. It was this email Vetsch responded to when effectively terminating Carroll. See Dkt. No. 29-5, p. 1. As Vetsch stated in her deposition, nothing in Carroll's June 12 email struck her as "racially hostile or racially harassing" behavior on the part of Spencer, and "it was ultimately my [Vetsch's] decision to liberate her [Carroll], to let her go, because of her disgruntledness with the company and being unhappy with our company management style." Dkt. No. 29-3, p. 5–6. Thus, Salon Del Sol has met its burden in providing a legitimate reason for Carroll's termination: Carroll's tone and list of work-place demands.

15

Under the McDonnell Douglas framework, once Defendants offer a legitimate, non-retaliatory reason for their actions, the burden shifts back to Plaintiff to show "by a preponderance of the evidence that the employer's reason is false and that [retaliation] was the real reason for the decision." Fordyce v. Prince George's Cnty. Md., 43 F.Supp.3d 537, at 549–50 (D.Md. 2014) (citation and internal quotation marks omitted).  In evaluating pretext, the court does not "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [action]." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir.2000).

Carroll argues that this Court "cannot make a determination as a matter of law that the fact that Carroll complained of racial harassment was not the straw that broke the camel's back when Salon Del Sol *admits* that it terminated Carroll for the very email that includes those [complaints about racial comments] complaints." Dkt. No. 36, p. 15.  Carroll then cites to the deposition of Steven Storer, who helped run the day to day operations of Salon Del Sol, including "a little bit of accounting", "a little bit of HR"; "a little bit of inventory procurement" in support of this claim. Dkt. No. 36-19, p. 2.  In his deposition, Storer discussed his view on how this claim relates to an Equal Employment Opportunity Commission ("EEOC") claim that was filed and discussed how Salon Del Sol may have shredded some documents. Dkt. No. 36-19, p. 8–9.  Carroll then argues that Storer's testimony stating "the racial aspect" was part of the problem with Carroll (Dkt. No. 36-19, p. 15–16), in conjunction with Salon Del Sol's alleged destruction of documents, admission that they terminated Carroll as a result of her emails, and evidence that Carroll was not otherwise a "disruptive" employee, is sufficient to provide evidence of pretext. See Dkt. No. 36, p. 15–24.  Indeed, Spencer does state in her deposition that Carroll "seemed passionate about her work.  Her clients loved her haircuts.  She was very good

at haircuts and they would all rave about her." Dkt. No. 36-11, p. 2. Thus, there are indications Carroll was otherwise a good employee.

From this evidence, Carroll has created a genuine issue of material fact for trial as to whether Salon Del Sol retaliated against her because of her complaints concerning Spencer's racial comments. It is not clear whether Carroll's complaints about Spencer's racial comments or Carroll's complaints about management resulted in her termination when Carroll otherwise was an undisruptive employee, seemed well-liked, and had earlier expressed her happiness at working in the salon.

## IV.

Considering the record as a whole and drawing all inferences in the light most favorable to Carroll, no genuine issues of material fact exist as to Carroll's hostile work environment claim but genuine issues of material fact do exist as to Salon Del Sol's motivation in firing Carroll in her retaliation claim and accordingly, Salon Del Sol's Motion for Summary Judgment (Dkt. No. 28) is **GRANTED in part** and **DENIED in part**.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered: December 29, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge